## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.:

DEBBIE CARTY and ROBYN BROWN,

      PLAINTIFFS,

v.

BROWARD SHERIFF GREGORY TONY, and
UDS1, UDS2 and UDS3, individually,

      DEFENDANTS.

_____/

## **COMPLAINT**

1)      This a civil action seeking money damages in excess of $15,000 dollars, exclusive of costs and interest against UDS1, individually, UDS2, individually, and UDS3, individually, and GREGORY TONY, in his capacity as SHERIFF OF BROWARD COUNTY ("SHERIFF").

2)      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343. PLAINTIFFS further invoke the supplemental jurisdiction of the United States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C. § 1367(a).

3)      The terms "false arrest", "illegal detention" and "false imprisonment" are used interchangeably throughout this pleading and it is intended they mean the same thing.

## PARTIES

4)     At all times material, PLAINTIFF DEBBIE CARTY ["CARTY"] was a resident of Broward County, Florida. CARTY is the mother of PLAINTIFF ROBYN BROWN.

5)     At all times material, PLAINTIFF ROBYN BROWN ["BROWN"] was a resident of Broward County, Florida. BROWN is the daughter of PLAINTIFF DEBBIE CARTY.

6)     Defendant, GREGORY TONY ["SHERIFF" or "BSO"] is the Sheriff of Broward County, Florida, and is otherwise *sui juris*. GREGORY TONY is sued in his official capacity.

7)     At all times material hereto, Defendant UNKNOWN DEPUTY SHERIFF ONE [hereinafter "UDS1"] was over 18 years of age and was *sui juris*. His true name is unknown to PLAINTIFFS, but known to Defendant SHERIFF.

8)     At all times material, UDS1 was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, UDS2 was acting under the color of state law.

9)     At all times relevant hereto, Defendant UDS1 was a deputy sheriff employed by SHERIFF and was acting in the course and scope of his employment for SHERIFF as a deputy sheriff.

10)    At all times material hereto, Defendant UNKNOWN DEPUTY SHERIFF TWO [hereinafter "UDS2"] was over 18 years of age and was *sui juris*. His true name is unknown to PLAINTIFFS, but known to Defendant SHERIFF.

11)    At all times material, UDS2 was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, UDS2 was acting under the color of state law.

-2-

12)     At all times relevant hereto, Defendant UDS2 was a deputy sheriff employed by SHERIFF and was acting in the course and scope of his employment for SHERIFF as a deputy sheriff.

13)     At all times material hereto, Defendant UNKNOWN DEPUTY SHERIFF THREE [hereinafter "UDS3"] was over 18 years of age and was *sui juris*. His true name is unknown to PLAINTIFFS, but known to Defendant SHERIFF.

14)     At all times material, UDS3 was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, UDS3 was acting under the color of state law.

15)     At all times relevant hereto, Defendant UDS3 was a deputy sheriff employed by SHERIFF and was acting in the course and scope of his employment for SHERIFF as a deputy sheriff.

16)     All conditions precedent to the filing of this lawsuit have been fulfilled pursuant to Florida Statutes §768.28.

17)     PLAINTIFFS presented their claims in writing to SHERIFF by means of a letter of demand for damages within three (3) years of the accrual of cause of action.

18)     DEFENDANT SHERIFF never made final disposition of the written claims of PLAINTIFFS within six (6) months of his presentation.

.

-3-

## FACTS

19)     On or about May 22, 2016, PLAINTIFFS resided at 8 Ann Lee Lane, Tamarac, in Broward County, Florida.

20)     On that date, BROWN was driving her vehicle on Bailey Road near her residence.

21)     BROWN pulled into a parking spot directly in front of the residence.

22)     After BROWN stopped her car, UDS1 approached her car and communicated with her. UDS1 told BROWN that he was there because she had been speeding, He demanded her driver license and she gave it him. The driver license was contained in her large handbag. UDS1 freely allowed BROWN to reach in the handbag to obtain the license.

23)     UDS1 took no action when she reached into the handbag establishing that he had no grounds to believe that a weapon or contraband was contained in the handbag. UDS1 never looked into BROWN's handbag.

24)     At no time did BROWN drive her vehicle in excess of the legal speed limit. Nor did she commit any traffic offense. There was no legitimate or legal basis for UDS1 demanding her license, taking her license, and detaining her by instructing her to remain in her vehicle.

25)     UDS1 took her license and returned to his vehicle where he ran computer checks on her license

26)     BROWN remained in her vehicle as instructed by UDS1 as he ran the computer checks in his vehicle. UDS1 never inspected BROWN's vehicle. From the location where he was parked he could not see what action, if any, BROWN was doing in her vehicle. At no time during that initial contact and when she remained in her vehicle, did UDS1 believe that BROWN posed any danger or possessed a weapon or contraband.

-4-

27)     BROWN exited her vehicle and closed the door. She stood adjacent to her vehicle. During this period and until she was later handcuffed, BROWN remained in possession of the handbag and no deputy looked in her handbag. At no time did any deputy request to look in her handbag.

28)     While that was occurring CARTY was in the residence. Carty learned that BROWN had been detained by a deputy. CARTY exited her residence and stood within the curtilage/courtyard of the residence.

29)      When CARTY exited the residence BROWN was standing outside her vehicle adjacent to the driver door. CARTY stayed in the curtilage/courtyard of the residence which was at least 30 feet from BROWN.

30)     CARTY communicated with BROWN by talking. At no time did CARTY yell, scream, curse, cause a scene, act disorderly, utter any fighting words, or make any fighting gestures or movements. At no time did CARTY violate the law.

31)     CARTY's purpose of being outside was to observe the activities involving her daughter BROWN and to gather information about what public officials do in public. During this period she communicated with BROWN and verbalized that the conduct of UDS1 was illegal and improper.

32)     UDS1 used the public address of his patrol car and ordered CARTY to enter her house.

33)     When CARTY did not go into the residence as ordered by UDS1, UDS1 approached CARTY and again ordered her to go into her residence. At all times CARTY remained outside of

any zone of concern and in no way did she interfere with UDS1's investigation of BROWN. Nor did CARTY act disorderly or in violation of the law.

34)     During the time UDS1 was communicating with CARTY, BROWN approached and stood next to CARTY. BROWN was directed to move away from CARTY. BROWN immediately complied.

35)     At no time did CARTY move from her location in the curtilage and courtyard of her residence.

36)     Before BROWN approached and stood next to CARTY, UDS1 had already announced to CARTY that he was arresting her for her refusal to go into her residence and for interference and that he was going to handcuff her.

37)     Two deputies arrived as back-up. The deputies were UDS2 and UDS3.

38)     BROWN was instructed to move away from CARTY. BROWN immediately moved away from CARTY to a distance/location approved by UDS1 and the two deputies.

39)     After BROWN moved away, UDS1 proceeded to handcuff CARTY.

40)     During that time period CARTY told BROWN to call her father which was overheard by all three deputies.

41)     As BROWN stood at the approved distance/location while UDS1 was handcuffing CARTY, BROWN removed her cell phone from her handbag to call her father. It was clearly visible to the deputies that the object BROWN removed from her handbag was a cell phone.

42)     USD1 demanded BROWN give him the cell phone to him. When she refused, USD1 tried to snatch it from her hand. When USD1 was unsuccessful, USD1 and USD2 grabbed BROWN,

handcuffed her and took her cell phone and handbag and placed then on the hood of BROWN's car which was adjacent to that location.

43)     During that time period while UDS1 was completing the process of handcuffing CARTY. UDS1 told USD1 and USD2 to seize BROWN. UDS1 completed handcuffing CARTY and took her to his patrol car where he placed her in the rear caged area.

44)     At no time before UDS1 handcuffed CARTY did he suspect that CARTY had committed a violation of law, was committing a violation of law, or was going to commit a violation of law.

45)     Throughout the process of being handcuffed and during the entire period CARTY was handcuffed, she acted peaceably and without resistance. No action by her interfered with UDS1's activities.

46)     At no time did UDS1, USD1 and USD2 have any suspicion that there was any weapon or contraband in BROWN's handbag in that they never looked inside the handbag before and after its seizure. They later returned it to BROWN without inspection.

47)     At the time USD1 tried to snatch the cell phone from BROWN and USD1 and USD2 seized her, handcuffed her, seized her handbag and cell phone and held her, no deputy had any suspicion that BROWN had committed a crime, was committing a crime, or was going to commit a crime. Her action in removing her cell phone from her handbag to utilize it did not interfere with any police activity.

48)     At no time did BROWN or CARTY commit any crime or violation of law. Nor was there any evidence that either had committed a crime, was committing a crime, or was going to commit a crime. At no time did any deputy suspect that CARTY had committed a violation of law,

was committing a violation of law, or was going to commit a violation of law. The seizure of BROWN and the taking of her property was illegal and in violation of law. At no time did any deputy suspect that BROWN had committed a violation of law, was committing a violation of law, or was going to commit a violation of law. The seizure of Carty and the taking of her property was illegal and in violation of law.

49)     At no time did BROWN and CARTY consent to any deputy touching them. All touching of them by any deputy was done against their wills.

50)     BROWN was endeavoring to exercise her First Amendment rights when she was seized, handcuffed and held and her cell phone was taken away from her. In retaliation, for her actions in trying to exercise her First Amendment rights, her phone and handbag were confiscated and she was grabbed, battered and handcuffed. The seizure of BROWN, her phone and her handbag was also in retaliation for her exercise of her First Amendment rights.

51)     After a period of time BROWN and CARTY were released from custody without any charge. BROWN's cell phone and handbag were returned to her.

52)     No legal process including no traffic citation was issued to BROWN or CARTY.

53)     No founded suspicion, reasonable suspicion, or probable cause existed for the detention and arrest of either PLAINTIFF for any offense.

54)     UDS1's seizure of CARTY was also in retaliation for her exercise of her First Amendment rights by verbalizing her disagreement with the actions of UDS1 and her refusal to go into the house. Additionally UDS1 told CARTY while she was being held in handcuffs in the cage area of his vehicle he could have given her a citation for interfering with the traffic stop and

-8-

disorderly conduct by her refusal to leave her location was also in retaliation for her exercise of her First Amendment rights.

## CAUSES OF ACTION

## COUNT 1

## STATE FALSE ARREST/SEIZURE CLAIM BY CARTY AGAINST SHERIFF

For her cause of action against DEFENDANT SHERIFF in Count 1, PLAINTIFF CARTY states:

55)     PLAINTIFF CARTY realleges and adopts, as if fully set forth in Count 1, the allegations of paragraphs 1 through 54.

56)     DEFENDANT UDS1 proximately caused the detention/seizure of CARTY in the absence of probable cause that CARTY committed any criminal offense.

57)     The actions of DEFENDANT UDS1, in causing the detention/seizure of PLAINTIFF CARTY in the absence of probable cause, were taken in the absence of lawful authority. The actions of DEFENDANT UDS1 constitute false arrest/false imprisonment of PLAINTIFF CARTY under Florida law.

58)     The false arrest/false imprisonment of CARTY was committed by DEFENDANT UDS1 in the course and scope of his employment as a deputy sheriff for SHERIFF.

59)     As a direct and proximate result CARTY suffered physical injury, and loss of her freedom, suffered loss of her liberty, mental anguish, and loss of capacity for the enjoyment of life. outlook.office.com/mail/inbox/id/AAQkADNmNWZhMGQ0LTBhMjYtNGQxYy1hOGM5LTA zZjU0MzM5MDkxMAAQAPdPozrxn81Op8X%2BejEHMi4%3DShe suffered grievously, was

brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation.

WHEREFORE, PLAINTIFF CARTY prays:

a) Judgment for compensatory damages against SHERIFF in excess of $ 15,000 dollars;

b) Costs of suit;

c) Trial by jury as to issues so triable; and

d) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2

### STATE FALSE ARREST/SEIZURE CLAIM BY BROWN AGAINST SHERIFF

For her cause of action against DEFENDANT SHERIFF in Count 2, PLAINTIFF BROWN states:

60) PLAINTIFF BROWN realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 54.

61) DEFENDANTS UDS1, USD1, and USD2 proximately caused the detention/seizure of BROWN in the absence of probable cause that BROWN committed any criminal offense.

62) The actions of DEFENDANTS UDS1, USD1, and USD2 in causing the detention/seizure of PLAINTIFF BROWN in the absence of probable cause, were taken in the absence of lawful authority. The actions of DEFENDANTS UDS1, USD1, and USD2 constitute false arrest/false imprisonment of PLAINTIFF BROWN under Florida law.

-10-

63)     The false arrest/false imprisonment of BROWN was committed by DEFENDANTS UDS1, USD1, and USD2 in the course and scope of her employment as a deputy sheriff for SHERIFF.

64)     As a direct and proximate result PLAINTIFF BROWN suffered physical injury, and loss of her freedom, suffered loss of her liberty, mental anguish, and loss of capacity for the enjoyment of life. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation.

WHEREFORE, PLAINTIFF BROWN prays:

a)     Judgment for compensatory damages against SHERIFF in excess of $ 15,000 dollars;

b)     Costs of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 3

## SECTION 1983 FALSE ARREST - DEFENDANT UDS1

For her cause of action against DEFENDANT UDS1 in Count 3, PLAINTIFF CARTY states:

65)     PLAINTIFF CARTY realleges and adopts as if fully set forth in Count 3, the allegations of paragraphs 1 through 54.

66)     DEFENDANT UDS1 subjected PLAINTIFF CARTY to the deprivation of the rights and privileges secured to him by the Constitution of the United States including the constitutional right not to be deprived of liberty and to be free from unlawful arrest under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

-11-

67)     With regard to the violations of the constitutional rights of PLAINTIFF CARTY as alleged in this count, the actions of DEFENDANT UDS1 were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF CARTY and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF CARTY.

68)     As a direct and proximate result of the acts described above, PLAINTIFF CARTY suffered great humiliation, mental suffering, and damaged reputation.

69)     As a further direct and proximate result of the conduct of DEFENDANT UDS1, PLAINTIFF CARTY suffered loss of her liberties and freedom, mental anguish, and loss of capacity for the enjoyment of life. The losses of PLAINTIFF CARTY are either permanent or continuing and PLAINTIFF CARTY will suffer the losses in the future, in violation of the civil and constitutional rights of PLAINTIFF CARTY.

WHEREFORE, PLAINTIFF CARTY prays:

a)     Judgment for compensatory damages in excess of $ 15,000 dollars against DEFENDANT UDS1;

b)     Judgment for exemplary damages against DEFENDANT UDS1;

c)     Costs of suit;

d)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)     Trial by jury as to issues so triable; and

f)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4

### SECTION 1983 FALSE ARREST/SEIZURE - DEFENDANTS UDS1, USD1, AND USD2

For her cause of action against DEFENDANTS UDS1, USD1, and USD2 in Count 4, PLAINTIFF

BROWN states:

70)      PLAINTIFF BROWN realleges and adopts as if fully set forth in Count 4, the

allegations of paragraphs 1 through 54.

71)      DEFENDANTS UDS1, USD1, and USD2 subjected PLAINTIFF BROWN to the

deprivation of the rights and privileges secured to him by the Constitution of the United States

including the constitutional right not to be deprived of liberty and to be free from unlawful arrest and

seizure of her property under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

72)      With regard to the violations of the constitutional rights of PLAINTIFF BROWN as

alleged in this count, the actions of DEFENDANTS UDS1, USD1, and USD2 were done with

malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or

oppress PLAINTIFF BROWN and were done with a reckless or callous indifference to the federally

protected rights of PLAINTIFF BROWN.

73)      As a direct and proximate result of the acts described above, PLAINTIFF BROWN

suffered great humiliation, mental suffering, and damaged reputation, including business

reputation/goodwill.

74)      As a further direct and proximate result of the conduct of DEFENDANTS UDS1,

USD1, and USD2, PLAINTIFF BROWN suffered loss of her liberties and freedom, mental anguish,

and loss of capacity for the enjoyment of life. The losses of PLAINTIFF BROWN are either

permanent or continuing and PLAINTIFF BROWN will suffer the losses in the future, in violation of the civil and constitutional rights of PLAINTIFF BROWN.

WHEREFORE, PLAINTIFF BROWN prays:

a)      Judgment for compensatory damages in excess of $ 15,000 dollars against DEFENDANTS UDS1, USD1, and USD2;

b)      Judgment for exemplary damages against DEFENDANTS UDS1, USD1, and USD2;

c)      Costs of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 5

### SECTION 1983 FIRST AMENDMENT RETALIATION - DEFENDANT UDS1

For her cause of action against DEFENDANT UDS1 in Count 5, PLAINTIFF CARTY states:

75)     PLAINTIFF CARTY realleges and adopts as if fully set forth in Count 5, the allegations of paragraphs 1 through 54.

76)     The false imprisonment and detention of PLAINTIFF CARTY by DEFENDANT UDS1 as alleged in Counts 1 and 3 was a result of and motivated by a retaliation against the PLAINTIFF CARTY for her words and actions to DEFENDANT UDS1 when she confronted DEFENDANT UDS1 which included protesting her actions regarding her daughter PLAINTIFF

-14-

BROWN, her refusal to leave her place of observation to go inside her residence, the detention and handcuffing of PLAINTIFF BROWN, and her statement to PLAINTIFF BROWN to call her father.

77)     The conduct of DEFENDANT UDS1 towards PLAINTIFF CARTY constitutes unlawful retaliation in violation of PLAINTIFF CARTY's clearly established rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983 and would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

78)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, PLAINTIFF CARTY has suffered bodily injury and resulting pain and suffering, loss of her freedom, suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF CARTY will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF CARTY prays:

a)     Judgment for compensatory damages in excess of $ 15,000 dollars against DEFENDANT UDS1;

b)     Judgment for exemplary damages against DEFENDANT UDS1;

c)     Costs of suit;

d)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)     Trial by jury as to issues so triable; and

f)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 6

### SECTION 1983 FIRST AMENDMENT RETALIATION - DEFENDANTS UDS1, UDS2, AND UDS3

For her cause of action against DEFENDANTS UDS1, UDS2, and UDS3 in Count 6, PLAINTIFF BROWN states:

79)     PLAINTIFF BROWN realleges and adopts as if fully set forth in Count 6, the allegations of paragraphs 1 through 54.

80)     The false imprisonment and detention of PLAINTIFF BROWN by DEFENDANTS UDS1, UDS2, and UDS3, as alleged in Counts 2 and 4 was a result of and motivated by a retaliation against the PLAINTIFF BROWN for her words and actions to DEFENDANTS UDS1, UDS2, and UDS3 when she confronted DEFENDANTS UDS1, UDS2, and UDS3 which included protesting her detention, the detention and handcuffing of her mother PLAINTIFF CARTY, and her actions and efforts to communicate and speak to her father including utilizing her cell phone.

81)     The conduct of DEFENDANTS UDS1, UDS2, and UDS3 towards PLAINTIFF BROWN constitutes unlawful retaliation in violation of PLAINTIFF BROWN's clearly established rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983 and would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

82)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, PLAINTIFF BROWN has suffered bodily injury and resulting pain and suffering, loss of her freedom, suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF BROWN will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF BROWN prays:

     a)     Judgment for compensatory damages in excess of $ 15,000 dollars against DEFENDANTS UDS1, UDS2, and UDS3;

     b)     Judgment for exemplary damages against DEFENDANTS UDS1, UDS2, and UDS3;

     c)     Costs of suit;

     d)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

     e)     Trial by jury as to issues so triable; and

     f)     Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone: (954) 723-9999
Fax: (954) 791-6565
garykollin@garykollinlaw.com;
pleadings@garykollinlaw.com

By: /s/ Gary Kollin
Florida Bar No. 282431