UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60912-CIV-SINGHAL/VALLE

DEBBIE CARTY and
ROBYN BROWN,

    Plaintiffs,

v.

BROWARD COUNTY SHERIFF
GREGORY TONY,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Broward County Sheriff's Motion for Summary Judgment (DE [49]). The parties have fully briefed the issues and the motion is ripe for review. For the reasons discussed below, the Motion for Summary Judgment is denied.

I.    INTRODUCTION

Plaintiffs Debbie Carty ("Carty") and Robyn Brown ("Brown") filed suit in this court alleging they were subject to a false arrest or seizure on May 22, 2016 in violation of the Fourth and Fourteenth Amendments and state law. Plaintiffs filed suit against three John Doe deputies under 42 U.S.C. § 1983 for violation of their federally protected rights. They also sued the Broward County Sheriff Gregory Tony (the "Sheriff") for state law false arrest/seizure. In June and August 2020, Plaintiffs amended their Complaint and substituted Deputies Casamiro Navarro, Jorge Ogando, and Scott Popick for the John Doe defendants. Because the individual deputies were not added to the suit until after the four-year statute of limitations lapsed, the Court dismissed the federal claims against

the deputies but retained pendent jurisdiction over the state law claims against the Sheriff. (DE [41]).

The Sheriff moves for summary judgment on the grounds that (1) Plaintiffs were not arrested; (2) the detention of Plaintiffs was reasonably justified; (3) reasonable suspicion existed to detain Plaintiffs for violations of Fla. Stat. § 843.02 (obstructing justice by resisting an officer without violence); and (4) probable cause existed to arrest Plaintiffs for violations of Fla. Stat. § 843.02.  Plaintiffs oppose the Motion and have submitted their affidavits, the deposition of Deputy Navarro, and a video of the incident taken from Plaintiff Carty's Ring camera.

II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'"[1]  *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  A dispute is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver,* 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case*." Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a

---

[1] The 2010 amendments to the Federal Rules of Civil Procedure changed one word in Rule 56(a) – genuine "issue" became genuine "dispute."  The comments explain that the word "[d]ispute" better reflects the focus of a summary-judgment determination.

matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### III. DISCUSSION

This case arises from a traffic stop conducted by BSO Deputy Casimiro Navarro. Navarro was conducting radar on Bailey Road in Tamarac, Florida, when he clocked Brown traveling 65 mph in a 35 mph zone. He attempted to pull her over at the entrance to her housing complex but she continued to drive until she pulled into her assigned parking spot. (DE [50], ¶ 3). Navarro approached her vehicle and requested her driver's license. (*Id.,* ¶ 4). At that point, Carty, Brown's mother, came out of her home. Navarro's affidavit states that Carty "began to interfere" but provides no detail. (*Id.*). Carty states that she remained in the courtyard of her residence and at least 25 feet from Brown, never raised her voice, never used threatening words, and never cursed. (DE [61], ¶ 4(c)).

Navarro's affidavit states that he asked Carty more than 10 times to return to her residence because she was interfering with the stop, but she refused to comply. Navarro threatened her with arrest if she did not comply. (DE [50] ¶ 6). Carty then used her phone. Carty asserts she was calling Brown's father, who did not answer. Navarro's affidavit

stated that Carty was using her phone to provoke/recruit others to come to the scene of the stop, but he acknowledged in his deposition that Carty said she was going to call Brown's father and that he did not know the purpose of the call. Navarro instructed Carty to go back to her home or be handcuffed. (DE [50], ¶ 10). He told her if she did not comply, he would place her under arrest. When Carty refused to comply with his orders, Navarro became fearful for his safety, called for back-up, handcuffed Carty, and placed her in the patrol car. When Navarro handcuffed Carty he stated that she was under arrest. (DE [61], ¶ 11). Navarro was fearful because another BSO deputy had been killed during a traffic stop when the assailants "had ambushed the deputy at a traffic stop via use of a phone to recruit other assailants to the location of the stop." (DE [50], ¶ 8).

As Navarro was attempting to handcuff Carty, Brown approached them. Navarro states that "Brown physically interfered, got in the way, and attempted to prevent [him] from accomplishing that task." (DE [50], ¶ 12). Brown states that Navarro stopped handcuffing Carty when she got to where they were standing. Brown put her arm around her mother's waist and was to her mother's left side, with Navarro to her mother's right. (DE [69-1], ¶¶ 37, 40). Navarro instructed Brown to step back and pointed to a location. Brown immediately went there and was guided there by another deputy. (*Id.*, ¶ 41). Carty handed her telephone to her 14-year-old daughter and put her hands behind her back so Navarro could handcuff her. She did not resist. (*Id.*, ¶ 43; DE [61], ¶ 11).

Upon determining that Brown's driver's license was valid and that Carty had no criminal history, Navarro released the women. (DE [50], ¶ 13). Carty was handcuffed for approximately 14 minutes, Brown for 9. (*Id.*).

IV.   DISCUSSION

The Sheriff argues that there was no arrest. Whether Carty and Brown were arrested matters not to this inquiry. "False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2nd DCA 2010). "Indeed, a person improperly detained pursuant to a lawful arrest may have the right to bring an action for false imprisonment." *Id.* "["W]hen an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen [may] a court conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).

Nevertheless, the Court finds that there is a genuine dispute of material fact as to whether Plaintiffs were arrested. Under Florida law, an arrest requires four elements:

> (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.

*Kyser v. State*, 533 So. 2d 285, 287 (Fla. 1988). Plaintiffs have submitted evidence that Deputy Navarro told Carty he was going to place her under arrest for not complying with his instruction to return to her home, then handcuffed and placed her in the patrol car. Plaintiffs have, therefore, established the existence of a dispute of material fact as to whether an arrest occurred.

5

Next, the Sheriff argues that the brief detention of Carty and Brown was reasonably justified under the circumstances and cannot give rise to liability. Citing *Reynolds v. State,* 592 So. 2d 1082, 1085 (Fla. 1992), the Sheriff argues that the use of handcuffs during the traffic stop was reasonable because (1) Brown did not immediately stop but instead drove into her complex and parked; (2) Carty "exited the home and interfered with" the traffic stop; and (3) "Carty also attempted to contact others via phone to respond to the scene." (DE [49]). In *Reynolds*, the Florida Supreme Court held "that police may properly handcuff a person whom they are temporarily detaining when circumstances reasonably justify the use of such restraint." *Reynolds,* 592 at 1085.

The facts presented to this Court, including the videotape,[2] raise a genuine dispute as to whether the circumstances reasonably justified the restraint. As the *Reynolds* court explained:

> We do not suggest that police may routinely handcuff suspects in order to conduct an investigative stop. Whether such action is appropriate depends on whether it is a reasonable response to the demands of the situation. When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers' suspicions that the suspect may be armed and dangerous.

*Id.* Carty and Brown state that neither of them verbally or physically threatened the deputies on the scene. Navarro states that he believed Carty was making phone calls to gather a crowd and he became fearful because of his knowledge that a group of assailants gathered by cell phone had shot and killed BSO Deputy Brian Tephford years

---

[2] The Court is obligated to view "the facts in the light depicted by the videotape." *Quick v. Geddie*, 763 Fed. Appx. 909, 913 (11th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 381(2007)).

earlier.[3]  Brown testified that she carried a large handbag which the deputies ignored, and thus, Navarro's claims of fear are exaggerated.  (DE [61]). There is, at least, a genuine dispute of fact regarding the reasonableness of handcuffing and detaining Plaintiffs that would preclude summary judgment.

Finally, the Sheriff argues that summary judgment should be granted because there was probable cause or, at least, a reasonable suspicion that Plaintiffs violated Fla. Stat. § 843.02, which makes it unlawful to obstruct justice by obstructing or resisting an officer without violence.  The elements of an offense of violation of §843.02 are "(1) the arresting officers were engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *Slydell v. State,* 792 So. 2d 667, 671 (Fla. 4th DCA 2001).

"The existence of probable cause to arrest defeats any claim of false arrest." *Brown v. Dillard's Inc.,* 170 Fed. Appx. 99, 100 (11th Cir. 2006).  In determining whether probable cause exists for an arrest, the court must consider

> whether the arresting officer's actions were objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

---

[3] Plaintiffs argue that Deputy Tephford's murder is not relevant to this case because he was killed ten years earlier.  The Court disagrees with that conclusion.  The 9/11 attack took place 20 years ago and that attack still affects security measures at airports today.  No doubt, the murder of Deputy Tephford – as well as the murders of other police officers during traffic stops – raises fears in police officers who are dealing with an often hostile public.  In any case, whether that fear wins the case is one thing, whether it is relevant is quite another.

*Hardigree v. Lofton*, 992 F.3d 1216, 1230 (11th Cir. 2021) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)).

There is no dispute that Deputy Navarro was lawfully engaged in a traffic stop.  But there are genuine disputes of material fact as to whether the actions of the Plaintiffs constituted obstruction or resistance.  "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02."  *Davis v. Williams,* 451 F.3d 759, 765 (11th Cir. 2006).

In a recent opinion in a false arrest case, the Fourth District Court of Appeal reversed a summary judgment entered in favor of the city because the plaintiff's "words and actions did not constitute obstruction of the officers in the performance of their duties." *Ford v. City of Boynton Beach,* 2021 WL 3376966, at *3 (Fla. 4th DCA Aug. 4, 2021).  As in the present case, the plaintiff in *Ford* was a mother who came to the scene where the police had detained her minor son.  She approached the officers with a video camera and began questioning why her son was being arrested.  The officers instructed her to turn the audio off her camera and she falsely told them the camera was off.  The police took her camera and placed her under arrest.  Even though the discussion was described as "confrontational," the court held that summary judgment was inappropriate under the facts of the case.  In a concurring opinion, Judge Warner explained that the plaintiff

> asked the officers questions and raised her voice when she discovered that they planned to arrest her son.  She did not curse at the officers (although cursing alone would never be sufficient to constitute obstruction).  She did not stand between her child and the officers so as to physically impede their duties.  She merely passionately expressed herself as any mother might do.

*Id.* at * 8.  Likewise, in the present case, Plaintiffs have presented evidence that they did not physically take any actions to impede the deputies in their work.  The deputy at the scene swears that they did.  There is, therefore, a genuine dispute of material fact that precludes summary judgment.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE [49]) is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 21st day of September 2021.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF